## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHNNIE STANLEY,

                 Petitioner,                 Case Number: 2:08-CV-14237

v.                                      HONORABLE DENISE PAGE HOOD

LINDA METRISH,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner, Johnnie Stanley, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, challenges his convictions for conspiracy to possess with intent to deliver a controlled substance, more than 650 grams, possession of a controlled substance, less than 50 grams, and felony firearm. Respondent argues that the petition should be denied because the claims are procedurally defaulted and/or meritless. For the reasons discussed, the Court denies the petition.

## I.    Facts

Petitioner's convictions arise from his involvement in a drug-trafficking operation. The Michigan Court of Appeals provided a factual overview of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

Defendant's convictions arise from allegations that he engaged in a long-term drug trafficking conspiracy with Nathaniel Lee and Roderick Lee of the purported Lee family organization, and several others.  During trial, several witnesses, including LaMark Northern and Eric Lee,[ ] who is the nephew of Nathaniel and Roderick, testified extensively concerning their drug transactions with and involvement in the Lee organization.  Several witnesses, including Northern and Lee, also testified as to defendant's receipt (and distribution) of cocaine from members of the Lee family organization.  Also, according to a police witness, in May 1993, defendant was a passenger in a stolen vehicle stopped by law enforcement officers.  Drug records and cocaine residue were found in the vehicle.

In September 1998, search warrants were executed for numerous homes in the Pontiac area connected to the Lee family organization.  Numerous individuals purportedly involved in the organization, including defendant, were subsequently arrested.  In the home that defendant occupied, the police found 15 individually packaged rocks of cocaine next to a stove, one rock that had fallen by the stove, a scale next to the cocaine, a loaded .22 revolver, plastic baggies and corner ties, $1,000 under a couch, and $300 on defendant's person.  There was evidence that, during the duration of the alleged drug trafficking conspiracy, defendant, as well as many of his alleged coconspirators, were not employed and did not file any tax returns from 1987 through 1998.

*People v. Stanley*, No. 245456, slip op. at 1-2 (Mich. Ct. App. Sept. 19, 2006).

## II.    Procedural History

Petitioner was convicted by a jury in Oakland County Circuit Court of conspiracy to deliver or possess with intent to deliver 650 or more grams of a controlled substance, possession with intent to deliver less than 50 grams of a controlled substance, and possession of a firearm during the commission of a felony.  On November 20, 2002, Petitioner was sentenced to 30 to 60 years in prison for the conspiracy conviction, one to 20 years for the possession with intent to deliver conviction, and two years for the felony-firearm conviction.

2

He filed an appeal of right in the Michigan Court of Appeals and raised these

claims:

I.      Defendant was denied his right to confrontation when a witness against him refused to testify, thereby resulting in the witness's preliminary examination testimony being read into the record.

II.     The trial court erred when it admitted prior bad acts evidence in violation of M.R.E. 404(b).

III.    There was insufficient evidence presented to support Defendant's conviction of conspiracy to possess with intent to deliver a controlled substance, more than 650 grams.

IV.     Defendant was denied the effective assistance of counsel when his counsel failed to seek severance from his co-defendant's trial.

Petitioner also filed a *pro per* supplemental brief, raising these claims:

I.      Defendant's right to due process was violated when the trial court wrongfully amended the grand jury indictment.  Further, the prosecutor committed misconduct when she amended the indictment.

II.     Defendant is entitled to a remand under M.C.R. 7.216(A)(5) because a witness recanted his testimony and the prosecutor committed misconduct when she failed to correct it.

III.    Defendant is entitled to a remand because he was denied a full record for purposes of his appeal in violation of M.C.R. 7.216(A)(4).

IV.     Defendant is entitled to a remand under M.C.R. 7.216(A)(3) to determine whether he is entitled to an in-camera hearing and new trial.

V.      Petitioner's right to due process was violated as a result of a perjured affidavit that was used to secure a search warrant.

VI.     Defendant is entitled to a *Ginther* hearing.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v.*

3

*Stanley*, No. 245456 (Mich. Ct. App. Sept. 19, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.

He raised these claims:

I.    Defendant was denied his right to confrontation when a witness against him refused to testify, thereby resulting in the witness's preliminary examination testimony being read into the record.

II.   The trial court erred when it admitted prior bad acts evidence in violation of MRE 404(b).

III.  There was insufficient evidence presented to support Defendant's conviction of conspiracy to possess with intent to deliver a controlled substance, more than 650 grams.

IV.   Defendant's right to due process was violated when the trial court wrongfully amended the grand jury indictment.

V.    The prosecutor committed misconduct when she amended the indictment.

VI.   Defendant is entitled to a remand under MCR 7.216(A)(5) because a witness recanted his testimony and the prosecutor committed misconduct when she failed to correct it.

VII.  Defendant is entitled to a remand because he was denied a full record for purposes of his appeal in violation of MCR 7.216(A)(4).

VIII. Defendant is entitled to a remand under MCR 7.216(A)(3) to determine whether he is entitled to an in-camera hearing and new trial.

IX.   Petitioner's right to due process was violated as a result of a perjured affidavit that was used to secure a search warrant.

X.    Defendant is entitled to a *Ginther* hearing.

The Michigan Supreme Court denied leave to appeal. *People v. Stanley*, 477

Mich. 1110 (Apr. 24, 2007).

4

Petitioner filed a motion for relief from judgment in the trial court, raising this claim:

I.      Petitioner's right to due process was violated when the amended grand jury indictment was not filed with the trial court pursuant to Mich. Comp. Laws 767.25(3)(4) which resulted in a jurisdictional defect.

The trial court denied the motion for relief from judgment.  Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court.  Both state appellate courts denied leave to appeal.  *People v. Stanley*, No. 292348 (Mich. Ct. App. Sept. 18, 2009); *People v. Stanley*, 485 Mich. 1128 (2010).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises these claims:

I.      Petitioner was denied his right to confrontation when a witness against him refused to testify, thereby resulting in the witness's preliminary examination testimony being read into the record.

II.     The trial court erred when it admitted prior bad acts evidence in violation of MRE 404(b).

III.    There was insufficient evidence presented to support Petitioner's conviction of conspiracy to possess with intent to deliver a controlled substance, more than 650 grams.

IV.     Petitioner was denied the effective assistance of counsel when his counsel failed to seek severance from his co-defendant's trial.

V.      Petitioner's right to due process was violated when the trial court wrongfully amended the grand jury indictment.

VI.     Petitioner is entitled to a remand under MCR 7.216 because a witness recanted his testimony and the prosecutor committed misconduct when she

5

failed to correct it.

VII.    Petitioner is entitled to a remand because he was denied a full record for purposes of his appeal.

VIII.   Petitioner's right to due process was violated as a result of a perjured affidavit that was used to secure a search warrant.

IX.     Petitioner's right to due process was violated when the amended grand jury indictment was not filed with the trial court pursuant to MCL 767.25(3)(4) which resulted in a jurisdictional defect.

## III.    Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

6

529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A. Procedural Default

Respondent argues that Petitioner's fourth and ninth claims are procedurally defaulted. Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by

8

the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3. If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Id.*, *citing Coleman*, 501 U.S. at 750-51.

Petitioner presented his fourth claim, ineffective assistance of trial counsel, to the

Michigan Court of Appeals, but failed to raise it in the Michigan Supreme Court. The claim, therefore, is unexhausted. No state court remedy is available to Petitioner to exhaust this claim because he already has filed one motion for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. Petitioner fails to show cause to excuse this default. This claim is procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is procedurally barred.

Respondent also argues that Petitioner's ninth claim for habeas relief, regarding the grand jury indictment, is procedurally defaulted. Petitioner raised this claim for the first time on collateral review in state court. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See*

10

Mich. Ct. R. 6.508(D)(3). This form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner could not establish cause and prejudice because his underlying claim lacked merit and that he had not shown that a miscarriage of justice had occurred. Accordingly, this claim is procedurally defaulted, unless Petitioner can satisfy the cause and prejudice standard or the miscarriage of justice exception. Petitioner fails to show cause to excuse his default and, as discussed, he fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is also procedurally barred.

### B.    Confrontation Clause

Petitioner argues that his right to confrontation was violated when the trial court admitted the preliminary examination testimony of Eric Lee. Lee testified at the preliminary examination, but, at Petitioner's trial, he exercised his Fifth Amendment privilege not to testify. The trial court held that Lee was unavailable under Michigan Rule of Evidence 804(a) and admitted Lee's preliminary examination testimony. The

11

Michigan Court of Appeals rejected Petitioner's argument, finding that Petitioner had the opportunity to cross-examine Lee at the preliminary examination and did, in fact, do so, and that Petitioner's motive to develop (or discredit) the witness's testimony at the preliminary examination was the same as it was a trial.  In addition, the state court noted that Petitioner offered no examples of questions that were not asked at the preliminary examination which would have been asked at trial.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Out-of-court statements that are testimonial are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

In this case, Eric Lee invoked his Fifth Amendment right not to testify at Petitioner's trial and was, therefore, unavailable.  Petitioner had an opportunity to cross-examine Lee at the preliminary examination.  The Sixth Circuit has recognized "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes."  *Al-Timini v. Jackson*, 379 F. App'x 435, 437 (6th Cir. 2010), *citing Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination")

12

(internal quotation marks omitted).  The Sixth Circuit reasoned that because the purpose of the preliminary examination is only to determine whether probable cause to proceed to trial exists, defense counsel may "lack adequate motivation to conduct a thorough cross-examination . . . and may wish to avoid tipping its hand to the prosecution by revealing the lines of questioning it plans to pursue."  *Id.*  Additionally, a preliminary hearing may occur too early in the proceedings to be useful to the defense.  *Id.*  Nevertheless, the AEDPA constrains a federal Court to grant habeas relief only if the state court's decision is contrary to or an unreasonable application of clearly established Supreme Court precedent.  The Sixth Circuit concluded in *Al-Timini* that no *clearly established* Supreme Court precedent holds that a preliminary examination fails to satisfy the *Crawford* standard of an opportunity for effective cross-examination.  *Id.*  Therefore, a state court's decision that no Confrontation Clause violation occurred where a defendant had an opportunity for cross-examination at a pre-trial hearing satisfies *Crawford's* guarantee and is not a basis for habeas corpus relief.

### C.    Prior Bad Acts

Petitioner argues that the trial court erred in admitting evidence related to other drug activities not directly linked to the charged conduct.  The Michigan Court of Appeals held that the testimony was properly admitted to show that Petitioner had a common scheme, system or plan for trafficking illegal drugs.  In addition, the court held that the charged and uncharged conduct were sufficiently similar to make the testimony relevant to the prosecution's theory that Petitioner was involved in a long-term drug

13

trafficking conspiracy with numerous other individuals to distribute large quantities of cocaine.

The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513. Petitioner's challenge to the admission of this evidence, therefore, does not warrant habeas relief.

### D.   Sufficiency of the Evidence

Next, Petitioner argues that the evidence presented at trial was insufficient to support his conviction for conspiracy to possess with intent to deliver a controlled substance more than 650 grams.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review

14

of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

The Michigan Court of Appeals held, in pertinent part:

To support a conviction for conspiracy to deliver a controlled substance, the prosecution must prove that:

(1) the defendant possessed the specific intent to deliver the statutory minimum as charged; (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged; and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the

15

statutory minimum as charged to a third person. . . .

A conspiracy is a voluntary, express or implied mutual agreement or understanding between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. *People v. Blume*, 443 Mich. 476, 481, 485; 505 N.W.2d 843 (1993); *People v. Cotton*, 191 Mich. App. 377, 392-393; 478 N.W.2d 681 (1991). For intent to exist, the defendant must know of the conspiracy, know of the objective of the conspiracy, and intend to participate cooperatively to further that objective. *Blume, supra* at 485. Direct proof of a conspiracy is not essential; rather, proof may be derived from the circumstances, acts, and conduct of the parties, and inferences may be made because such evidence sheds light on the coconspirators' intentions. . . .

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude that the elements of conspiracy were proven beyond a reasonable doubt. The evidence, if believed, indicated that Roderick and Nathaniel Lee led a drug trafficking organization, which included defendant, and that defendant knowingly cooperated with other members of the Lee family organization to further a drug trafficking scheme to possess and deliver numerous kilograms of cocaine. There was evidence that defendant was regularly at Roderick's house throughout the 1990s, and lived in a house owned by Roderick. There was evidence that Nathaniel and Roderick received several kilograms of cocaine, which they distributed to third parties, including defendant. Eric Lee, an admitted member of the organization, testified that, on several occasions, defendant advised him that he was supplied by Roderick, and also indicated that he "sold" for him. Eric also testified to discussing with defendant how defendant had "messed up" 24 ounces of cocaine that was related to Roderick. Additional testimony was given that Roderick indicated to LaMark Northern that he could make more money by fronting cocaine to defendant rather than selling it to Northern.

Additionally, in May 1993, defendant was in a stolen vehicle with Laws, and drug records and cocaine residue were found in the vehicle. In September 1998, the police executed a search warrant at defendant's residence and found 16 rocks of cocaine, a scale, drug packaging material, a fully loaded weapon, and $ 1,300. There was also evidence that defendant was not employed during the alleged duration of the drug trafficking conspiracy. In sum, viewed in a light most favorable to the prosecution, the evidence was sufficient to sustain defendant's conviction of conspiracy to

16

deliver or possess with intent to deliver 650 or more grams of a controlled substance.

*Stanley*, slip op. at 4-5.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, __, 130 S. Ct. 665, 673 (2010), (quoting *Jackson*, 443 U.S. at 326). According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of conspiracy to deliver cocaine exceeding 650 grams did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### E.    Amendment of the Indictment

Petitioner claims that his right to due process was violated when the trial court granted the prosecution's motion to amend the indictment to add the charges of possession with intent to deliver less than 50 grams of a controlled substance and felony

firearm.

The Sixth Amendment guarantees a criminal defendant a right to be clearly informed of the nature and cause of the charges against him in order that he may prepare a defense. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). A complaint or indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). Amendments to a state criminal information are permissible as long as the amendment does not enhance the degree of the crime charged or unfairly surprise the defendant. *Wright v. Lockhart*, 854 F.2d 309, 312 (8th Cir. 1988).

In this case, the indictment provided Petitioner sufficient notice that he was being charged with the two additional counts. The Michigan Court of Appeals' decision that the amendment was proper was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### F.    Alleged Prosecutorial Misconduct and Perjured Testimony

Petitioner next claims that he is entitled to a remand pursuant to Michigan Court

18

Rule 7.216 because witness Eric Lee recanted his testimony and the prosecutor committed misconduct in presenting perjured testimony from Eric Lee and LaMark Northern.

A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000). A claim for relief under Michigan Court Rule 7.216 is not cognizable on federal habeas review.

Petitioner also claims that the prosecutor committed misconduct by presenting false testimony from two prosecution witnesses: Eric Lee and LaMark Northern. Petitioner argues that these witnesses presented inconsistent testimony before the Oakland County grand jury and before a federal grand jury.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires

19

the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. at 269–72, 79 S.Ct. 1173, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998).

A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood an comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2155 (June

20

11, 2012) (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87).

The Michigan Court of Appeals rejected this claim:

We initially note that defendant has failed to present on appeal the inconsistent testimony from the federal grand jury and the Oakland County grand jury. But even if we were to accept defendant's claim regarding the alleged discrepancies, reversal is not required because it is highly unlikely that the testimony in question affected the verdict. With regard to Northern, he agreed that at one point when previously testifying in front of a federal grand jury, he discussed the breakdown of a cocaine deal between himself, Joe Abraham, Willie Adams, Demar Garvin, Marvin Smith, and Demark Anthony. The prosecution brought out that, when previously testifying, Northern testified to a more specific breakdown, including the fact that drugs also went to Roderick, Nathaniel, and Larry McGee. Given the fact that this testimony did not directly relate to defendant and considering the other evidence against defendant, there is no reasonable likelihood that any discrepancy affected the outcome of the trial.

With regard to Eric, defense counsel cross-examined him regarding a purported statement that he made to an agent indicating that the Lee organization did not front drugs. Eric denied making the statement, indicated that the statement was not correct, and reiterated that the organization did front drugs. Defense counsel did not cross-examine the agent regarding the alleged statement. Consequently, there has been no showing that Eric's testimony was actually false. Also, the jury was aware of the purported inconsistent statement. Moreover, there is no evidence, beyond mere speculation, that the prosecutor sought to present false testimony, or conceal the alleged inconsistencies. Because there is no tangible indication that the prosecutor engaged in any misconduct or that the evidence could have affected the verdict, we reject this claim of error.

*Stanley*, slip op. at 8.

Petitioner has not shown that the prosecutor knowingly presented false testimony. Eric Lee was cross-examined about the inconsistencies in his testimony. There was no attempt to conceal these inconsistencies. In addition, the discrepancies in Northern's testimony related to details not relevant to the elements of the crime and certainly not

reasonably likely to have impacted the outcome of the trial.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### G.    Trial Transcripts

In his seventh habeas claim, Petitioner argues that he was denied a copy of the full record for his appeal thereby violating his right to due process.  Petitioner argues that he was not provided a transcript for a hearing that occurred on February 27, 2002, and that hearings that occurred on April 12 and 16, 2002, were not accurately transcribed.

Due process requires that a defendant in a criminal case be provided with a transcript of a prior proceeding when that transcript is needed for an effective defense or appeal.  *See, e.g., Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956) (state violates equal protection if it fails to provide an indigent defendant with an available transcript for appeal).  However, the United States Supreme Court has held that "a State, in applying *Griffin v. Illinois* to situations where no transcript is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal."  *Norvell v. Illinois*, 373 U.S. 420, 423 (1963) (footnote omitted).  The Court further stated that "[w]hen, through no fault of the State, transcripts of criminal trials are no longer available...some practical accommodation must be made."  *Id.* at 424.  Consequently, the Court has held that alternative methods of reporting trial proceedings are constitutionally permissible when a transcript is unavailable as long as

22

those methods provide the appellate court with an equivalent record of events. *See Draper v. Washington*, 372 U.S. 487, 495 (1963).

The Supreme Court "has never held that the absence of a portion of a trial transcript automatically entitles the defendant to a retrial." *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir. 2006). The United States Court of Appeals has ruled that a state prisoner seeking federal habeas must demonstrate prejudice due to a missing transcript before a constitutional violation of a right to a fair appeal will be found. *See Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). The Sixth Circuit has explained that "[l]ower courts, interpreting *Griffin* and *Norvell* in the context of cases where transcripts were simply missing, have held that the [F]ourteenth [A]mendment does not require a word-by-word transcript where the production of such is impossible and the failure to produce the transcript is not invidiously motivated." *Bransford*, 806 F.2d at 86 (citations omitted). In such a case, "the absence of...the transcripts is not a per se denial of [the defendant's] due process right to a fair appeal." *Id*. Rather, "in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcript." *Id*. While this showing is difficult and therefore need not require absolute proof of prejudice, the defendant "must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id*; *see also Jackson*, 179 Fed. Appx. at 252; *Scott v. Elo*, 302 F.3d 598, 604-05 (6th Cir. 2002).

The Michigan Court of Appeals denied Petitioner relief on this claim, stating:

. . .The unavailability of a transcript does not automatically require the

23

vacation of a defendant's conviction.  We must determine whether the unavailability of those portions of the trial transcript so impedes the defendant's right to appeal that  new trial must be ordered. . . .The defendant bears the burden of demonstrating prejudice resulting from the missing transcripts.  *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). . .

Defendant first challenges the absence of a February 27, 2002, pretrial transcript.  According to the lower court docket listings, a pretrial hearing was held on February 27, 2002.  On March 2, 2004, defendant ordered a transcript of proceedings held on that date.  On May 6, 2004, the court reporter indicated that there were no proceedings that occurred on February 27, 2002.  On February 23, 2005, the court entered an order directing that a "Corrected Docket Entry Sheet" be prepared to "[d]elete entry showing that a pretrial was held on 2/27/02, as the Court has certified there was no pretrial on that date."  Defendant claims that the court reporter is incorrect, and that there were arguments on that date regarding the prosecutor's motion to amend the grand jury indictment.  The record shows that a hearing concerning that same matter occurred on July 24, 2002.  Even if defendant could adequately rebut the court reporter's claim that no proceedings occurred on February 27, 2002, defendant has failed to persuasively argue how the absence of any arguments allegedly made on February 27, 2002, impeded his constitutional right to appeal where the same matter was addressed at the transcribed hearing in July 2002, and the existing record shows no additional amendment of the grand jury indictment after October 1998. . . . Thus, this claim is without merit. . . .

We also reject defendant's request for audiotapes of proceedings that occurred in April 2002, to establish the true and accurate account of the proceeding.[6]  Trial transcripts are presumed accurate.  *People v. Abdella*, 200 Mich. App. 473, 475; 505 N.W.2d 18 (1993).  "Where a defendant is able to make a colorable showing that inaccuracies in transcription have adversely affected the ability to secure postconviction relief, and such matters have reasonably been brought to the trial court's attention, the defendant is entitled to a remedy."  *Id.* at 475-76.

Here, defendant makes no persuasive argument as to how, if the transcripts contained the comments he asserts are missing, his ability to seek postconviction relief would actually be enhanced.  *Id.* at 476.  Appellate relief is thus not warranted under the circumstances.

_____

24

[6] Defendant contends that, during the hearings, the trial court threatened Eric Lee, causing him not to testify.

*Stanley*, slip op. at 10.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, Petitioner has not shown, that the state court's decision that no hearing occurred on February 27, 2002 was erroneous.  Second, Petitioner has not shown, nor is there any indication in the record, that a transcript of the missing portions of the record were necessary for Petitioner to appeal his convictions. Mere speculation that errors occurred or that Petitioner was somehow prejudiced is insufficient to establish a constitutional violation.  *See Bransford*, 806 F.2d at 86.  Habeas relief is not warranted on this claim.

### H.      Fourth Amendment Claim

Finally, Petitioner argues that his right to due process was violated because a perjured affidavit was used to secure a search warrant.  The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.

25

Second, the court must determine whether presentation of the claim was in
fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity

for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366

F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to

suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90 (Mich.

1965) (describing the availability of a pre-trial motion to suppress). Because Michigan

provides a procedural mechanism for raising a Fourth Amendment claim, Petitioner may

only demonstrate entitlement to relief if he establishes that presentation of his claim was

frustrated by a failure of that mechanism. This he has not done.

Petitioner challenged the warrant on direct review. The Michigan Court of

Appeals conducted a thorough review of the claim and concluded that Petitioner was not

entitled to an evidentiary hearing. He also raised this claim in his application for leave to

appeal to the Michigan Supreme Court. Given this record, it is clear that the Michigan

courts were cognizant of Petitioner's Fourth Amendment claim and that he received all

the process he was due. While Petitioner challenges the state courts' handling of his

claim and the resulting decisions, he has not shown that the procedures were flawed such

that he was unable to properly litigate these issues. Petitioner had a full and fair

opportunity to litigate his Fourth Amendment claim. Accordingly, his claim is not

cognizable on habeas review pursuant to *Stone v. Powell*.

26

## V.        Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.      Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

     **S/Denise Page Hood**     
     **Denise Page Hood**
     **United States District Judge**

**Dated:  November 29, 2012**

**I hereby certify that a copy of the foregoing document was served upon Johnnie**

27

**Stanley #326530, 16770 S. Watertower Drive, Kincheloe, MI 49785 and  counsel of record on November 29, 2012, by electronic and/or ordinary mail.**

**S/LaShawn R. Saulsberry**
**Case Manager**